UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARKEYS HINES, | CASE NO. 1:19CV0289 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Markeys Hines ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB"). ECF Dkt. #1. In his brief on the merits, filed on July 8, 2019, Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence due to his treatment of certain medical opinions. ECF Dkt. #14. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case for reevaluation of Dr. Keppler's September 6, 2016 opinion.

## I. PROCEDURAL HISTORY

On March 8, 2016, Plaintiff filed a Title II application for a period of disability and DIB. ECF Dkt. #11 ("Tr.")[2] at 19, 94, 116, 178. In his application, Plaintiff alleged disability beginning April 9, 2014 due to: back injury; arthritis; depression; and "will have x-lift surgery on back." *Id.* at 19, 79-80, 96. Plaintiff's application was denied initially on May 17, 2016 and upon reconsideration on October 13, 2016. *Id.* at 19, 93-94, 114-16.

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill. *See* Fed. R. Civ. P 25(d).

[2] All citations to the transcript refer to the page numbers assigned when the transcript was compiled (located on the bottom right corner of each page) rather than the page numbers assigned when the transcript was filed in the CM/ECF system ("PageID #").

1

On November 9, 2016, Plaintiff requested an administrative hearing. Tr. at 19, 132. On December 20, 2017, a hearing was held before an ALJ in which Plaintiff, with counsel present, and a vocational expert ("VE") testified. *Id.* at 19, 38. The ALJ issued his decision on May 29, 2018, finding Plaintiff not disabled and denying his application for period of disability and DIB. *Id.* at 16-32. Plaintiff requested a review of the hearing decision, and on January 14, 2019, the Appeals Council denied review. *Id.* at 1-4, 176.

On February 7, 2019, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. The parties consented to the jurisdiction of the undersigned. ECF Dkt. #17. On July 8, 2019, Plaintiff filed a merits brief, and the Commissioner filed a merits brief on August 7, 2019. ECF Dkt. #s 14, 15.

## II.     **RELEVANT PORTIONS OF THE ALJ'S DECISION**

On May 29, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 16-32. The ALJ stated that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. *Id.* at 21. He further stated that Plaintiff had not engaged in substantial gainful activity since April 9, 2014, the alleged onset date. *Id.* Continuing, the ALJ determined that Plaintiff had the following severe impairments: spine disorders; dysfunction of major joints (ankle); depressive disorder; substance addiction disorder; and alcohol use disorder. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), except for the following limitations: can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can frequently balance and occasionally stoop, kneel, crouch, and crawl; requires a cane for ambulation; can never work at unprotected heights; is limited to performing simple routine tasks with no strict production rate-paced requirements; can tolerate frequent interactions with supervisors, coworkers, and the public; can tolerate occasional workplace changes. Tr. at 23.

The ALJ then stated that Plaintiff is unable to perform any past relevant work. Tr. at 30. He further found that Plaintiff was a younger individual on the alleged disability onset date, has at least a high school education, and is able to communicate in English. *Id.* The ALJ noted that transferability of job skills was not an issue because Plaintiff's past relevant work is unskilled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 9, 2014, through the date of his decision. *Id.* at 31.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' [is] in other contexts, the threshold for such evidentiary sufficiency is not high."). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    LAW AND ANALYSIS

Plaintiff challenges the ALJ's decision of May 29, 2018, alleging that the ALJ erred in weighing the opinions of: (1) treating physician Dr. Louis Keppler; and (2) examining physician Dr. Michael Harris. ECF Dkt. #14 at 11-17. For the following reasons, the Court finds that the ALJ did not commit reversible error, except for his treatment of Dr. Keppler's September 2016 opinion.

### A.     OPINION OF TREATING PHYSICIAN

Plaintiff first argues that the ALJ violated the treating physician rule in his treatment of the opinions of treating physician, Dr. Louis Keppler, M.D. ECF Dkt. #14 at 11-16. This Court agrees as it pertains to Dr. Keppler's September 6, 2016 opinion. An ALJ must give controlling weight to the opinion of a treating source[3] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Price v. Comm'r Soc. Sec. Admin.*, 342 Fed.Appx. 172, 175-76 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)). Although an ALJ must "consider" all of the factors in 20 C.F.R. § 404.1527(c) and must "apply" the factors listed in 20

---

[3] The Social Security Administration has changed the treating physician rule for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," available at https://www.regulations.gov/document?D=SSA-2012-0035-0001. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors. Since Plaintiff filed his claim before March 27, 2017, the former treating physician rule applies.

5

C.F.R. § 404.1527(c)(2), including its subsections, through (c)(6) to determine the weight to give that opinion, he is not required to discuss every factor in his decision as long as he provides "good reasons." *See* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (1996)[4]; *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted). Even a one sentence explanation for discounting a treating physician's opinion can suffice under the good reasons requirement. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement.) (internal citations omitted).

Under the "good reasons" rule, the ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. This allows a plaintiff to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to

---

[4] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 544); *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011).

Dr. Keppler treated Plaintiff's low back condition since November 2014 and performed an L4 fusion surgery in April 2016. ECF Dkt #14 at 13; tr. at 357, 363, 659-60, 704-05. The ALJ afforded treating physician status to Dr. Keppler and the parties agree that he is qualified as a treating physician. *See* tr. at 28; ECF Dkt. #s 14, 15.

On September 6, 2016, Dr. Keppler filled out a two-page checkbox form, opining that Plaintiff could: occasionally lift and carry 15 pounds and 10 pounds frequently; stand and walk a total of 2 hours in an 8-hour workday and 30 minutes without interruption; sit for a total of 6 hours in an 8-hour workday and 1 to 2 hours without interruption; can rarely climb, balance, stoop, crouch, kneel, and crawl; occasionally perform reaching, push/pull, fine manipulation, and gross manipulation; was prescribed a cane, walker, and brace; would need to be able to alternate positions between sitting, standing, and walking at will; and requires additional unscheduled rest periods during an 8-hour workday. Tr. at 28, 784-85.

The ALJ gave mixed weight to Dr. Keppler's opinions, stating the following:

> The undersigned gives great weight to Dr. Keppler's standing, walking, and sitting limitations because it is consistent with the record for the reasons discussed in Drs. Manos and Das' opinions above. The undersigned gives the remainder of this opinion little weight because the medical evidence does not support the limitations for the same reasons discussed in Dr. O'Reilly's opinion above.

Tr. at 28-29. Because the ALJ incorporated, by reference, his prior discussions of the opinions of State agency medical consultants, Dr. Diane Manos, MD, and Dr. Elizabeth Das, MD, as well as the opinion of chiropractor Dr. James O'Reilly, DC, such opinions must also be examined. As to the State agency reviewers, Drs. Manos and Das, the ALJ stated:

> In May 2016, at the initial level, State Agency Medical Consultant, Diane Manos, MD, opined the claimant could perform light work with reduced standing and walking to four hours and postural and manipulative limitations (citing tr. at 88-

7

>89). In October 2016, at the reconsideration level, State Agency Medical Consultant, Elizabeth Das, MD, affirmed Dr. Manos' opinion except Dr. Das found the claimant could occasionally climb ramps and stairs and had no limitation in kneeling (citing tr. at 108-10). The undersigned gives the opinions little weight because the medical evidence supports greater limitations. such as, the claimant had marked lower back tenderness (citing tr. at 787). In addition, the claimant's lumbar flexion and extension was greatly limited, muscle strength decreased, and he had a positive straight leg raise bilaterally (citing tr. at 1668).

Tr. at 27-28. The ALJ noted the following with regard to Dr. O'Reilly's opinion:

>In May 2017, the claimant's treating chiropractor, James O'Reilly, DC, opined the following: The claimant could occasionally and frequently lift and carry five pounds. The claimant could stand/walk for a total of four hours in an eight-hour workday and sit for a total of three hours. The claimant requires a sit/stand option. The claimant could rarely climb, balance, stoop, and crouch, but never kneel or crawl. The claimant has manipulative and environmental limitations. The claimant would require four additional hours of rest time during an eight-hour day (citing tr. at 1612-13). The undersigned gives this opinion little weight because the medical evidence does not support Dr. O'Reilly's limitations. For example, during a consultative examination, the claimant walked normally with a rolling walker, he got up on and down from the exam table, and his straight leg raise was negative (citing tr. at 786-87). Additionally, in 2017, the claimant reported after he received a walking boot, his ankle ultimately healed and the pain gradually resolved and upon examination, he had normal range of motion in his left ankle and no instability (citing tr. at 1622-23). Moreover, Dr. O'Reilly is not an acceptable medical source.

Tr. at 28.

Plaintiff points out several compelling reasons why the ALJ failed to identify good reasons for giving less than controlling weight to Dr. Keppler's opinion. ECF Dkt. #14 at 14-16. The first reason pertains to Dr. Keppler's limitation that Plaintiff would need to be able to alternate positions between sitting, standing, and walking, at will[5]. *See* tr. at 785. The ALJ afforded "great weight" to Dr. Keppler's opinion as to standing, walking and sitting because those opinions were consistent with the record for the same reasons as Drs. Manos and Das' opinions were given little weight, the reasons being that Plaintiff showed marked lower back tenderness, his lumbar flexion and extension was greatly limited, his muscle strength was decreased, and he had a positive straight leg raise bilaterally. *Id.* at 27-28 (citing tr. at 787, 1668). Plaintiff notes that the ALJ never discussed that Dr. Keppler limited standing and walking to no more than 30

---

[5] Plaintiff points out that, with some differences, three different physicians, Drs. O'Reilly, Keppler, and Harris, all independently opined that Plaintiff would need to be able to alternate between sitting and standing at some level of frequency. ECF Dkt. #14 at 17 n.3; *see* tr. at 785, 1613, 1625.

minutes at a time and that Plaintiff would need to be able to alternate positions at will. ECF Dkt. #14 at 14 (citing tr. at 785). Plaintiff avers that since Dr. Keppler's opinion limiting standing and walking was entitled to "great weight," then his further limitations on standing and walking, implicating a need to alternate between sitting and standing, should likewise have been entitled to weight. *Id.* Plaintiff indicates prejudicial error by noting that the VE testified that the need to alternate between sitting and standing "at will" would preclude all work, as would a need to alternate sitting and standing at 30 minute intervals for four hours each during the course of the workday. *Id.* (citing tr. at 69-71, 75); *see also* tr. at 66-68.

The Commissioner claims that the ALJ's finding of sedentary work, by definition, assumes sitting for up to 6 hours in an 8-hour workday with very little standing or walking, and that such finding indicated that the ALJ accepted only the portion of Dr. Keppler's standing limitations (up to 2 hours in an 8-hour workday) while rejecting the sit/stand option. ECF Dkt. #15 at 13 (citing 20 C.F.R. § 404.1567(a); tr. at 23). The Commissioner also points out that, when discussing Dr. Harris' opinion, the ALJ stated that "the sedentary limitation eliminates the need for a sit/stand option." *Id.* (citing tr. at 28). Citing to SSR 83-12, the Commissioner concludes that if Plaintiff could sit for 2 hours at a time without interruption, then he would not require an at-will option to alternate positions. *Id.* The Social Security regulations do not support this conclusion. SSR 83-12 describes the special situation of needing to alternate between sitting and standing as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either *sedentary or light work except that the person must alternate periods of sitting and standing*. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. *Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work* (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.).

SSR 83-12, 1983 WL 31253, at *4. This Ruling indicates that alternating between sitting and standing is not a part of the definition of sedentary work and cannot therefore simply be impliedly eliminated by an RFC of sedentary work. *Id.*; *see also Wages v. Sec'y of Health & Human Servs.*,

9

755 F.2d 495, 498 (6th Cir. 1985) ("Alternating between sitting and standing, however, may not be within the definition of sedentary work."). SSR 96-6p[6] sheds further light on this issue:

> Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7. The ALJ and Plaintiff's attorney explicitly questioned the VE on the sit/stand option during the December 20, 2017 hearing. *See* tr. at 64-76. In fact, the VE testified that there were no jobs for an individual like Plaintiff at the sedentary level who needed the option to sit or stand at will. Tr. at 75-76 (referring to hypothetical one (tr. at 64-65), except not at a light exertional level, and referring to a later hypothetical (tr. at 71-72) at the sedentary exertional level).

Accordingly, the ALJ did not provide a good reason to discount Dr. Keppler's further standing and walking limitation of needing to alternate positions between sitting and standing. Given the VE's testimony, this error is not harmless and constitutes one reason for reversal.

The next reason the ALJ provided for affording "little weight" to the remainder of Dr. Keppler's opinion is because the medical evidence did not support the limitations for the same reasons discussed in Dr. O'Reilly's opinion. The reasons given to discount Dr. O'Reilly's opinion are either without merit or do not apply to Dr. Keppler. The final reason discussed below is too weak to suffice alone as a "good reason."

First, the ALJ correctly noted that Dr. O'Reilly, as a chiropractic physician, is not an acceptable medical source. Tr. at 28. While true, this provides no reason to reject the opinion of

---

[6] SSR 96-6p has been rescinded and does not apply to claims filed after March 27, 2017. *See* SSR 17-2p, 82 Fed. Reg. 15263-02 (Mar. 27, 2017) (rescinding and replacing SSR 96-6p). Since Plaintiff filed his claim in 2016, this Ruling still applies.

10

Dr. Keppler, an orthopedic surgeon, who is an acceptable medical source and whom the ALJ acknowledged is a treating physician. *Id.*

Second, the ALJ cited to records from October 2016, indicating that Plaintiff "walked normally with a rolling walker" and got up and down from the exam table at a consultative exam as reasons to discount Dr. O'Reilly's opinion and "the remainder" of Dr. Keppler's opinion. Tr. at 28 (citing tr. at 786-87). As Plaintiff points out, walking with a rolling walker is not the same as walking normally. ECF Dkt. #14 at 15. In addition, such reasons pertain to Plaintiff's ability to stand and walk, but, as noted, the ALJ actually afforded great weight to Dr. Keppler's standing, walking, and sitting limitations. Tr. at 28. Thus, this reason (walking normally with a rolling walker) does not clearly pertain to Dr. Keppler's "remainder" opinion. Further, the ability to get up and down from an examination table has nothing to do, logically, with the "remainder" of Dr. Keppler's opinion, notably that Plaintiff: could rarely climb, balance, stoop, crouch, kneel, and crawl; has manipulative and environmental limitations; and requires additional unscheduled rest periods. Tr. at 28, 784-85.

Third, the ALJ afforded little weight to Dr. O'Reilly's opinion, in part, because "his straight leg raise was negative" at the time of Dr. Eulogio Sioson's October 5, 2016 consultative examination. Tr. 28, 787. However, the ALJ also afforded "little weight" to Dr. Sioson's opinion. *Id.* at 28, 786-87. On the same page of his decision, the ALJ cited to a finding of a positive straight leg raising test as a reason to impose more stringent limitations than those opined by Drs. Manos and Das. *Id.* at 28 (citing tr. at 1668). The Court agrees with Plaintiff that "[i]t is frankly impossible to reconcile how a positive straight leg raising test on one occasion supports giving 'little weight' to Drs. Manos and Das' opinions, while a negative straight leg raising test on another occasion somehow supports giving 'little weight' to the opinions of Drs. O'Reilly and Keppler." ECF Dkt. #14 at 15.

Finally, as a further reason to afford little weight to Dr. O'Reilly and Dr. Keppler's "remainder" opinion, the ALJ cited to a May 17, 2017 record from Dr. Harris, showing improvement in Plaintiff's left ankle fracture. Tr. at 28 (citing tr. at 1622-23). The ALJ found that dysfunction of major joints (ankle) was a severe impairment and even created a RFC to

11

accommodate the ankle impairment by limiting Plaintiff to sedentary work and required the use of a cane for ambulation. *Id.* at 21, 23, 26. Also, the ALJ afforded only "partial," "some," and "little" weight to Dr. Harris' opinion. *Id.* Drs. O'Reilly and Keppler appear to have primarily treated Plaintiff for his lumbar spine issues, but progress notes indicate that they did at least consider or even treat his left foot issues as well. *See, e.g.*, tr. at 359-64, 703-05, 710-28 (Dr. Keppler); tr. at 1662-73, 1680, 1698, 1701-02 (Dr. O'Reilly). Dr. O'Reilly did not implicate Plaintiff's ankle fracture in his limitations, although Dr. Keppler did refer to it, and both physicians specifically cited to lumbar disc conditions and prior MRI results as a basis for their respective restrictions. *See* tr. at 784-85, 1612-13. The Court finds that this reason is weak and not a "good reason" because of the weight given to these cited records and in combination with the other supporting reasons previously discussed that this Court has discounted. Accordingly, the Court finds that the ALJ did not provide sufficient good reasons to discount and afford only "little weight" to the remainder of Dr. Keppler's September 2016 opinion.

The Commissioner correctly points out that the Sixth Circuit has explained that an ALJ may properly discount opinions, including a treating physician's opinion, when the opinion is in the format of a conclusory checkbox questionnaire. ECF Dkt. #15 at 13-14; *Ellars v. Comm'r of Soc. Sec.*, 647 Fed.Appx. 563, 566 (6th Cir. 2016) (unpublished) (finding that ALJ may properly afford little weight to treating physician's two-page check-off form that did not cite to objective medical evidence); *Serrano v. Berryhill*, No. 1:17CV2644, 2019 WL 691311, *7 (N.D. Ohio Jan. 30, 2019) (Limbert, J.), *report and recommendation adopted Serrano v. Comm'r of Soc. Sec.*, No. 1:17CV2644, 2019 WL 669634 (N.D. Ohio Feb. 19, 2019) (finding the same). While this is true, the ALJ in the instant case neither impliedly nor explicitly rejected Dr. Keppler's opinion for the reason that it was on a checkbox form. *See* tr. at 28-29. This Court cannot make up a reason to discount an opinion that the ALJ did not rely on. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (noting it is the duty of the ALJ to "provide 'good reasons' for discounting treating physicians' opinions, [and provide] reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir.

2011) (making it "clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'").

In a letter dated May 8, 2017, Dr. Keppler provided another opinion that Plaintiff should be considered disabled because his disability will persist for at least one year and as such, he should be eligible for Social Security disability benefits. Tr. at 29, 1659. The ALJ gave this opinion little weight because it is an issue reserved for the Commissioner. *Id.* at 29. Contrary to the Commissioner's assertion, Plaintiff does not actually challenge the ALJ's treatment of this letter. *See* ECF Dkt. #14; #15 at 14. Even if there was a challenge, there is no error because the ALJ was correct in stating that the determination of disability for Social Security purposes is reserved to the Commissioner. *See* 42 U.S.C.A. § 405(b)(1); 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1527(d)(1); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.") (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997)).

The Court finds that the ALJ's treatment of the opinion of Dr. Keppler's September 6, 2016 opinion violated the treating physician rule. 20 C.F.R. § 404.1527(c)(2). Accordingly, the Court finds that the ALJ's treatment of the aforementioned opinion evidence does not constitute substantial evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). This case is remanded to the ALJ for reevaluation of Dr. Keppler's September 6, 2016 opinion, specifically with regard to Dr. Keppler's limitation concerning the need to alternate positions between sitting and standing as well as Dr. Keppler's "remainder" opinion.

### B. OPINION OF EXAMINING PHYSICIAN

Plaintiff next challenges the ALJ's treatment of Worker's Compensation Medical Expert, Michael A. Harris, MD, an examining physician. ECF Dkt. #14 at 16-17. This Court finds no error in the ALJ's treatment of Dr. Harris' opinion for the reasons set forth below.

The Sixth Circuit has held that a single examination does not suffice to afford treating physician status. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 506 (6th Cir. 2006) (also noting that "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship.") (citing *Cunningham v. Shalala*, 880 F.Supp. 537, 551 (N.D.Ill.1995) (where physician saw claimant five times in two years, it was "hardly a foregone conclusion" that his opinion should be afforded great weight)); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding treating physician rule did not apply to clinical psychologist who examined claimant only once, was paid by SSA to examine claimant, and administered no treatment); *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) ("Dr. Zupnick is not a treating physician given the fact that he evaluated the claimant on only one occasion.").

Plaintiff was referred by a worker's compensation board to Dr. Harris for a one-time independent medical exam on May 17, 2017. Tr. at 1621, 1626. Dr. Harris is not a treating physician. Plaintiff does not argue that Dr. Harris should be afforded treating physician status and the ALJ did not treat him as such. Accordingly, the "good reasons" requirement afforded to treating physicians does not apply to Dr. Harris' opinion. Nonetheless, the Commissioner must still "consider" and "evaluate" every medical opinion from acceptable medical sources in the record in light of the 20 C.F.R. § 404.1527(c) factors. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) ("The factors set forth in 20 C.F.R. § 404.1527, which under the regulation apply only to medical opinions from acceptable medical sources, nevertheless 'represent basic principles that apply to the consideration of all opinions from medical sources ... who have seen the individual in their professional capacity.'"); *Hedrick v. Berryhill*, No. 1:17CV2310, 2018 WL 6348759, at *6 (N.D. Ohio Nov. 14, 2018), *report and recommendation adopted*, No. 1:17-CV-2310, 2018 WL 6344611 (N.D. Ohio Dec. 4, 2018) ("[O]pinions of one-time examining physicians ... are weighed under the same factors as treating physicians including supportability, consistency, and specialization." ) (quoting *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp.2d 813, 823–24 (S.D.Ohio 2011)).

After his May 17, 2017 exam, Dr. Harris opined that Plaintiff could work at a sedentary level of lifting about 10 to 15 pounds at the waist level as long as he does not lift from the floor, and he could sit and stand for about 30-minute intervals for 4 hours each day. Tr. at 28, 1625. He further opined that Plaintiff should avoid any repetitive stooping and bending. *Id.* at 1625. The ALJ stated the following concerning the weight he gave to Dr. Harris' opinion:

> The undersigned gives this opinion partial weight. The undersigned gives some weight to the lifting limitation because it is generally consistent with the medical evidence for the same reasons discussed above in Drs. Manos' and Das' opinions. The undersigned gives the remainder of the opinion little weight because the sedentary limitation eliminates the need for a sit/stand option.

Tr. at 28.

As an initial matter, the ALJ's reasoning pertaining to the sit/stand option is incorrect, as noted in the prior discussion concerning Dr. Keppler. Plaintiff argues that the remaining reason about the lifting limitation is faulty because Dr. Harris included an additional limitation precluding him from lifting from floor level, whereas neither Dr. Manos nor Dr. Das limited lifting from the floor level. ECF Dkt. #14 at 17; *see* tr. at 88, 108.

While this is true, the standard for non-treating medical opinions do not require the ALJ to provide "good reasons" to discount the opinion. An ALJ need not incorporate all of a non-treating source's opined restrictions, even if he attributes significant weight to the opinion. *See White v. Comm'r of Soc. Sec. Admin.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio 2013) ("The fact that the ALJ did not incorporate all of [agency examining physician's] restrictions, despite attributing significant weight to his opinion, is not legal error in and of itself."); *cf. Smith v. Comm'r of Soc. Sec.*, No. 5:11CV2104, 2013 WL 1150133 (N.D.Ohio, Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."). Rather, the ALJ must simply show that he considered and evaluated the opinion, which the ALJ has done here. *See* 20 C.F.R. § 404.1527(c); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013). While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 194, 198 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546).

The ALJ discussed Dr. Harris' opinion in light of the 20 C.F.R. § 404.1527(c) and afforded mixed weight to different parts of the opinion. Tr. at 28. The ALJ's error concerning the sit/stand option pertaining only to Dr. Harris' opinion is harmless in light of the standard for non-treating medical opinions. *See Bollenbacher v. Comm'r of Soc. Sec.*, 621 F. Supp. 2d 497, 502 (N.D. Ohio 2008) (applying harmless error standard to examining physician's opinion); *Bollenbacher v. Comm'r of Soc. Sec.*, 621 F. Supp. 2d 497, 502 (N.D. Ohio 2008) (same). Therefore, the Court finds that the ALJ adhered to the regulations regarding the examining medical expert, Dr. Harris' opinion, and supported his findings with substantial evidence.

## **VI. CONCLUSION AND RECOMMENDATION**

For the reasons described above, the Court finds that the ALJ's treatment of Dr. Keppler's September 6, 2016 opinion is not supported by substantial evidence. This case is remanded to the ALJ for reevaluation of Dr. Keppler's September 6, 2016 opinion, specifically with regard to Dr. Keppler's limitation concerning the need to alternate positions between sitting and standing as well as Dr. Keppler's "remainder" opinion.

Accordingly, the Court REVERSES the decision of the ALJ and REMANDS Plaintiff's case for further proceedings consistent with this opinion.

Case reversed and remanded under 42 U.S.C. § 405(g) (sentence four).

IT IS SO ORDERED.

Date: March 13, 2020          */s/George J. Limbert*
                              GEORGE J. LIMBERT
                              UNITED STATES MAGISTRATE JUDGE